ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Frank James Westbrook was convicted of selling less than thirty grams of marijuana. The Montgomery County Circuit Court found that Westbrook qualified for enhanced sentencing as both a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2009) and as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). Accordingly, the circuit court sentenced Westbrook to six years in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. Aggrieved, West-brook appeals.
 

 ¶ 2. Westbrook is represented by the Mississippi Office of Indigent Appeals. His appellate counsel has filed a brief under
 
 Lindsey v. State,
 
 939 So.2d 743 (Miss.2005) and certified that she has searched the record and found no arguable issues on appeal.
 
 [1]
 
 Having fulfilled our own obli
 
 *71
 
 gation to examine the record to determine whether there are meritorious issues, we have found none. Accordingly, we find no error and affirm the judgment of the circuit court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ B. Westbrook’s conviction was set into motion when a confidential informant (Cl) agreed to attempt to purchase drugs from him. Although the Cl had prior Texas convictions for forgery and credit-card abuse, she had served her sentences and was not facing any further charges. That is, the Cl did not agree to purchase drugs from Westbrook as a means to avoid being charged or prosecuted for a crime. Instead, the Cl agreed to do so in exchange for pay.
 

 ¶ 4. In February 2010, Agent Clint Walker with the Mississippi Bureau of Narcotics and Bubba Nix, the Montgomery County Sheriff, both met with the CL The Cl was outfitted with surveillance equipment, as was her vehicle. She was also provided with twenty dollars to purchase drugs from Westbrook. Because both law-enforcement officers were males, they limited their pat-down search of the Cl to areas of loose-fitting clothing. They did not search her hair, her shoes, or any “private areas.”
 

 ¶ 5. After the “pre-buy” meeting, Agent Walker and Sheriff Nix followed the Cl to Westbrook’s home. The law-enforcement officers kept the Cl within their sight while remaining hidden from Westbrook. The Cl, who had known Westbrook for more than a year, knocked on Westbrook’s door and went inside. Only then did she leave Agent Walker’s and Sheriff Nix’s sight. However, the surveillance equipment on the Cl captured the events that transpired.
 

 ¶ 6. Once inside Westbrook’s home, the Cl asked Westbrook whether she could buy some “hard” — a term used to describe crack cocaine. Westbrook explained that he did not have any. The Cl then asked Westbrook to sell her twenty dollars worth of marijuana. Westbrook sold the Cl four small bags of marijuana. Five minutes after the Cl went inside Westbrook’s home, she left with the marijuana that she had purchased.
 

 ¶ 7. Immediately after the transaction, the Cl had a “post-buy” meeting with Agent Walker and Sheriff Nix. The Cl gave the marijuana to Agent Walker, who immediately placed it in an evidence bag and marked it before tendering it to the Mississippi Crime Laboratory. Next, the Cl, Agent Walker, and Sheriff Nix watched the video that was captured by the surveillance equipment that had been on the Cl’s person. Agent Walker prepared a statement for the Cl’s signature. The Cl signed the statement, although it indicated that she had purchased crack cocaine from Westbrook, instead of marijuana.
 

 ¶ 8. Westbrook was subsequently indicted and charged with selling less than thirty grams of marijuana. The indictment against Westbrook also alleged that he qualified for enhanced sentencing as a subsequent drug offender as well as a habitual offender. Westbrook’s trial counsel filed a motion for discovery, requesting, among other things, the names and addresses of all witnesses that the prosecution proposed to call, copies of any statement the prosecution expected to submit, a copy of West-brook’s criminal record, and any exculpatory material concerning Westbrook.
 

 
 *72
 
 ¶ 9. At trial, the prosecution called Agent Walker; the Cl; and Archie Nichols, a “forensic scientist specializing in the identification of controlled substances.” Agent Walker and the Cl testified consistently with the facts discussed above. They also testified that the portion of the Cl’s statement that indicated Westbrook had sold her crack cocaine was a mistake. They both clarified that Westbrook had sold the Cl marijuana, rather than crack cocaine. Westbrook’s trial counsel vigorously cross-examined Agent Walker and the Cl regarding the Cl’s motivation for acting on behalf of the government, the limited pat-down search of the Cl, and the chain of custody of the marijuana. Nichols, an employee of the Mississippi Crime Laboratory, testified that he tested the substance that Agent Walker had delivered to the crime laboratory. Nichols further testified that the substance was 2.8 grams of marijuana. Again, Westbrook’s trial counsel vigorously cross-examined Nichols. After Nichols testified, the prosecution rested its case-in-chief.
 

 ¶ 10. After being informed that it was his decision whether to testify, as well as other matters that relate to that decision, Westbrook chose not to testify. He rested without calling any witnesses. After the prosecution finally rested and the parties presented their closing arguments, the jury retired to deliberate. Less than thirty minutes later, the jury found Westbrook guilty of selling less than thirty grams of marijuana.
 

 ¶ 11. During Westbrook’s sentencing hearing, the prosecution presented evidence that Westbrook had two prior felony convictions arising from different circumstances-each carrying a sentence of at least one year. The evidence further indicated that Westbrook had previously been convicted of selling a controlled substance. Consequently, the circuit court found that Westbrook qualified for enhanced sentencing as a subsequent drug offender and a habitual offender. Accordingly, the circuit court sentenced Westbrook to the maximum possible sentence under the circumstances, which was six years in the custody of the MDOC without eligibility for parole or probation. Westbrook appeals.
 

 ANALYSIS
 

 ¶ 12. In
 
 Lindsey,
 
 939 So.2d at 748 (¶ 18), the Mississippi Supreme Court detailed the process that must be followed when appellate counsel for an indigent criminal defendant concludes there are no arguable issues on appeal. Specifically, the
 
 Lindsey
 
 court stated:
 

 (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4),(7);
 
 see also Smith v. Robbins,
 
 528 U.S. 259, 280-81, 120 S.Ct. 746 [145 L.Ed.2d 756] (2000) (stating that “counsel’s summary of the case’s procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.”).
 

 (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
 

 
 *73
 
 (3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
 

 (4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
 

 (5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
 

 Lindsey,
 
 939 So.2d at 748 (¶ 18) (internal citations and footnotes omitted).
 

 ¶ 13. Westbrook’s appellate counsel complied with the requirements set forth in
 
 Lindsey.
 
 She filed a brief in which she states that she “diligently searched the procedural and factual history of this criminal action and scoured the record” and found no arguable issues on appeal. West-brook’s attorney specifically asserts that she examined: (1) the reasons for West-brook’s arrest and the circumstances surrounding it, (2) any possible violations of Westbrook’s right to counsel, (3) the entire transcript and record, (4) the circuit court’s rulings, (5) possible prosecutorial misconduct, (6) all of the jury instructions, (7) all exhibits — whether admitted or not, (8) possible misapplication of the law in sentencing, (9) the indictment and all pleadings in the record, and (10) possible ineffective-assistance-of-eounsel claims. Westbrook’s attorney further states that she informed Westbrook that she found no arguable issues and that she advised West-brook of his right to file a pro se brief. However, Westbrook did not file a pro se brief.
 

 ¶ 14. After our own thorough review of the record, we find no issues that would require supplemental briefing. Accordingly, we affirm the circuit court’s judgment of conviction and sentence, which falls within the sentencing parameters regarding a conviction for selling marijuana as a subsequent drug offender under section 41-29-147 and a habitual offender under section 99-19-81 of the Mississippi Code Annotated.
 

 ¶ 15. THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF LESS THAN THIRTY GRAMS OF MARIJUANA AND SENTENCE AS A SUBSEQUENT DRUG OFFENDER AND A HABITUAL OFFENDER OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J„ NOT PARTICIPATING.
 

 [1]
 

 . In
 
 Lindsey,
 
 939 So.2d at 748 (¶ 18), the Mississippi Supreme Court modified the procedure that appellate counsel must follow when appointed counsel determines that
 
 *71
 
 there are no appealable issues within the record.