MAXWELL, J.,
for the court:
¶ 1. Andy Edward Minor was convicted of shooting into a dwelling, aggravated assault, and possession of a firearm by a convicted felon. On appeal, he argues: (1) the State violated its Brady obligations; (2) the trial judge abused his discretion by denying his motion for continuance; (3) the admission of one of Minor’s prior felony convictions and other bad acts was plain error; and (4) the jury’s verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶ 2. In June 2010, Cynthia Skipper was dating McArthur Scott Jr. Four years earlier, Skipper had been involved in a relationship with Minor, during which she became pregnant with Minor’s child.
¶ 3. On June 27, 2010, Skipper’s brother, Peter Banks, showed up at Scott’s home to pick up their mother’s van, which Skipper had borrowed. Banks brought Minor with *713 him. Banks and Minor tried to get Skipper to leave with them. They went so far as to call the Fayette Police Department. At trial, Scott testified that, when Chief David Houston arrived, Scott asked him to make Minor leave because Minor “had tried to jump” Scott once before. Skipper also testified she told Chief Houston that she was afraid Minor was “going to try to do something” because Skipper was staying with Scott. Reasoning that Skipper was free to decide to stay with Scott, Chief Houston got the van keys from Skipper, gave them to Banks, and told Minor to leave Scott’s residence.
¶ 4. Two days later, around midnight, Skipper was watching television at Scott’s trailer, while Scott slept on the couch. Skipper woke Scott up when she heard a knock on the door. Skipper and Scott both testified it was Minor at the door. Scott grabbed his rifle and told Minor to leave. In response, Minor allegedly fired a shotgun through the trailer’s window, blowing off one of Scott’s fingers. Minor then used the butt of his gun to bust through the trailer’s door. Once inside, Scott and Minor began to struggle. As the two wrestled, Minor used his shotgun to choke Scott. Skipper ran to the bedroom, and Minor went after her. Scott then crawled through the window, ran to his grandmother’s trailer next door, and called the police. Minor told Skipper, “I be back [sic]. I’m going to kill both of ya’ll.” Minor then left Scott’s trailer and drove away.
¶ 5. Minor took the stand and admitted he went to Scott’s trailer on June 29, 2010. But he denied having a gun or shooting Scott. According to Minor, when he arrived at Scott’s house, he saw a man wearing a white shirt and black pants leaving the trailer. He claimed he could not identify the man. Minor testified he then saw Scott, who was covered in blood, come out of the trailer holding a gun. Minor and Scott purportedly went inside the trailer where, according to Minor, he asked Scott what had happened. Minor did not testify as to how Scott responded. Minor did testify Skipper told him she was going to collect her things and leave with him, but he decided to leave without her.
¶ 6. Minor was charged in a three-count indictment. The first count alleged he discharged a firearm into an occupied dwelling. The second and third counts charged aggravated assault and possession of a firearm by a convicted felon, respectively.[1] Based on Minor’s prior felony convictions for grand larceny and manufacturing a controlled substance, he was charged as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007).
¶ 7. Minor was appointed counsel on September 13, 2010. Trial began on October 7, 2010. After the jury was empaneled, Minor moved for a continuance to retain private counsel, which was denied. The jury convicted Minor of all three counts. The trial judge sentenced Minor to ten years’ imprisonment for shooting into a dwelling, twenty years’ for aggravated assault, and ten years’ for possession of a firearm by a convicted felon. The judge ordered all three sentences to be served consecutively and, based on Minor’s status as a habitual offender, without eligibility for parole or early release. After his motion for a new trial was denied, Minor timely appealed.
*714 DISCUSSION
I. Request for Criminal Records
¶ 8. On September 15, 2010, Minor filed a motion for production and disclosure, requesting the criminal records of all witnesses the State intended to call at trial. Minor claims the State violated its obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it failed to produce Skipper’s criminal record.
¶9. “It is well established that the State ha[s a] duty to turn over all exculpatory material relevant to [a defendant’s] case.” Howell v. State, 989 So.2d 372, 378 (¶ 13) (Miss.2008). Furthermore, “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Id. (quoting Brady, 373 U.S. at 87, 83 S.Ct. 1194).
¶ 10. The United States Supreme Court has expressly extended the Brady duty of disclosure to include material evidence “affecting” the credibility of a witness. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). “Brady’s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness.” Strickler v. Greene, 527 U.S. 263, 282 n. 21, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). There is little dispute that a government witness’s prior criminal conduct may be used for impeachment purposes and should be disclosed by the State.
¶ 11. However, even where impeachment material exists, nondisclosure by the State does not necessarily establish that the outcome was unjust. The term “Brady violation” is sometimes used to refer to the State’s failure to disclose exculpatory or impeachment evidence. But “strictly speaking, there is never a real Brady violation’ unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.” Id. at 281. Rather, “[t]o establish that a Brady violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is ‘favorable to the accused, either because it is exculpatory, or because it is impeaching’; (2) the State suppressed the evidence, ‘either willfully or inadvertently’; and (3) ‘prejudice ensued.’” Skinner v. Switzer, — U.S. -, -, 131 S.Ct. 1289, 1300, 179 L.Ed.2d 233 (2011) (quoting Strickler, 527 U.S. at 281-282, 119 S.Ct. 1936).
¶ 12. On appeal, Minor has provided no record evidence that Cynthia Skipper had any felony convictions. So he has shown no suppression by the State and accordingly no basis to further administer the materiality test to determine whether a cognizable Brady violation exists.[2] Thus, we find his Brady claim fails.
II. Motion for Continuance
¶ 13. Minor argues the circuit court erred in denying him a continuance, which he requested to retain his own attor *715 ney instead of proceeding to trial with appointed counsel.
¶ 14. “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice.” Boone v. State, 973 So.2d 237, 241 (¶ 13) (Miss.2008) (quoting Ross v. State, 954 So.2d 968, 1007 (¶ 91) (Miss.2007)). This court has previously addressed whether the denial of a last-minute request for a continuance to allow a defendant time to retain private counsel is an abuse of discretion. Moore v. State, 873 So.2d 129, 131-32 (¶¶ 6-11) (Miss.Ct.App.2004). While Minor does have the right to counsel, “the right to choose counsel is not absolute” and “must not be abused or manipulated in such a way as to ‘thwart the progress of a trial.’ ” Id. at 131 (¶ 10) (quoting McCormick v. State, 802 So.2d 157, 160 (¶ 10) (Miss.Ct.App.2001)).
¶ 15. In Moore, the defendant, who was represented by two court-appointed attorneys, moved for a continuance on the day of trial. Id. at (¶ 9). Moore argued the five days from the time his attorneys were appointed to the day of his trial “was insufficient to allow his attorney time for proper preparation.” Id. The trial judge denied the motion because “the case had been set for trial, witnessés had been summoned, jurors had been empaneled, and the attorney that [the defendant] intended to hire had been given the opportunity to represent him but declined to do so.” Id. at (¶ 7). Because Moore had “adequate opportunity ... to seek out counsel of his own choosing” during the five months between his arrest and arraignment, and because Moore had two court-appointed attorneys who announced they were ready for trial, this court found no abuse of discretion in denying Moore’s motion for continuance. Id. at 131-32 (¶ 10).
¶ 16. As in Moore, Minor requested a continuance the day of trial after the jury had been empaneled. We find Minor had adequate time between his August 17, 2010 arraignment and his October 7, 2010 trial date to retain private counsel.[3] Further, his court-appointed lawyer appeared the day of trial and announced she was ready for trial-having had significantly more time to prepare than the court-appointed attorneys in Moore. See id. at 131 (¶ 9). We therefore find no abuse of discretion in the trial court’s denial of Minor’s motion for a continuance.
III. Evidence of Minor’s Prior Convictions and Prior Bad Acts
¶ 17. Minor argues statements made at trial regarding his prior convictions and other alleged bad acts deprived him of his right to a fair trial. Minor admits he failed to object to these statements at trial. He now seeks review under the plain-error doctrine. This doctrine permits appellate courts to “recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental, substantive right.’ ” Neal v. State, 15 So.3d 388, 403 (¶ 32) (Miss.2009) (quoting Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008)). When reviewing for plain error, “we must determine ‘if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.’ ” Id. (quoting *716 McGee v. State, 953 So.2d 211, 215 (¶ 8) (Miss.2007)).
¶ 18. Minor alleges prejudice from the court admitting the sentencing order from his prior conviction for manufacture of a Schedule I controlled substance.[4] However, when pursuing a felon-in-possession charge, if the defendant does not offer to stipulate to his status as a prior-convicted felon, “the prosecution [is] entitled to prove its case by evidence of its own choice[.]” Esco v. State, 9 So.3d 1156, 1165 (¶37) (Miss.Ct.App.2008) (quoting Old Chief v. United States, 519 U.S. 172, 186-87, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). Here, Minor made no offer to stipulate he was a convicted felon — an essential element of count three. Absent a stipulation or objection, we find no reversible error in the State’s use of the sentencing order as substantive evidence of Minor’s status as a prior-convicted felon to establish this required element.[5] See id. at 1164 (¶ 35), 1165 (¶ 37).
¶ 19. Minor also contends the trial judge committed plain error by not excluding, sua sponte, Scott’s testimony that Minor had previously threatened him over his relationship with Skipper. See M.R.E. 404(b) (“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.”). “Usually, evidence of another crime or pri- or bad act is not admissible.” Simmons v. State, 813 So.2d 710, 716 (¶ 30) (Miss.2002) (citation omitted). But here, two days before the attack, Scott had asked Chief Houston to order Minor to leave Scott’s residence because Minor had previously threatened Scott. There was also testimony about a more remote threat from Minor to Scott that had occurred at Skipper’s mother’s house. And during Minor’s attorney’s cross-examination of Scott she insinuated there was bad blood between Minor and Scott and that Scott did not like Minor because both men had been involved in relationships with Skipper. While this evidence was likely admissible under Rule 404(b) to establish motive, knowledge, or intent, the State did not pursue admission under this rule. Even so, we find the uncontested testimony about Minor’s threats to Scott was arguably relevant to the complete story involving the assault on Scott. Thus, we find no plain error in the unchallenged testimony.
IV. Weight of the Evidence
¶ 20. Minor argues the trial court erred by denying his motion for new trial because the jury’s verdict is contrary to the weight of the evidence. When reviewing a trial court’s decision to deny a motion for a new trial, the evidence is considered “in the light most favorable to the verdict.” Williams v. State, 35 So.3d 480, 491 (¶ 41) (Miss.2010) (citing Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). We will only order a new trial where “the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.” Id.
¶ 21. Minor argues the jury should not have relied solely on the eyewitness testimony of Scott and Skipper to *717 convict him when there was no physical evidence, such as gun powder residue on his hands or testimony linking his fingerprints to the shotgun. We disagree and reject the notion that forensic or physical evidence is required to support every criminal conviction.
¶ 22. In Johnson v. State, 44 So.3d 400, 411 (¶¶ 36-37) (Miss.Ct.App.2010), we affirmed a jury’s verdict that the defendant was guilty of discharging a firearm' into a dwelling house though no bullet casings were located. We found the two eyewitnesses’ accounts were “substantial evidence” to support the conviction. Id. Scott and Skipper testified Minor fired a shotgun through the trailer’s window, hitting Scott and causing him to lose a finger: Immediately before the shooting, Scott recognized Minor’s voice asking him to “open the door.” And after being shot through his window, Scott explained that Minor busted open his trailer door with a shotgun. The two then struggled, with Minor ultimately choking Scott with the shotgun. Skipper similarly recounted the attack, and added that before leaving Minor told her that he would be back later to kill both of them.
¶ 23. Minor points out Scott’s and Skipper’s versions conflict with his own. But “[a]ny conflicts between witnesses’ accounts are properly weighed by the jury,” which is “the sole judge of the credibility of witnesses and the weight and worth of their testimony.” Martin v. State, 970 So.2d 723, 727 (¶ 19) (Miss.2007) (quoting Jenkins v. State, 947 So.2d 270, 278 (¶ 26) (Miss.2006)). Viewing the evidence in the light most favorable to the verdict, we find the jury’s verdict is supported by the evidence. Thus, we find no error in the trial court’s denial of Minor’s motion for a new trial.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY OF CONVICTION OF COUNT I, SHOOTING INTO A DWELLING, AND SENTENCE OF TEN YEARS; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; AND COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, ALL AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.
GRIFFIS, P.J., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., CARLTON, RUSSELL AND FAIR, JJ.

. See Miss.Code Ann. §§ 97-37-29 (Rev. 2006) (making it a felony to discharge of a firearm into a dwelling house); 97-3-7(2)(b) (Supp. 2011) (providing that a person is guilty of aggravated assault if he purposefully or knowingly causes bodily injury to another with a deadly weapon); and 97-37-5(1) (Supp. 2011) (making it unlawful for a person convicted of a felony to possess a firearm).

. See Skinner, 131 S.Ct. at 1300 ("Brady proscribes withholding evidence ‘favorable to an accused’ and 'material to his guilt or to punishment.' ”) (quoting Cone v. Bell, 556 U.S. 449, 451, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)); Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing Bagley, 473 U.S. at 678, 105 S.Ct. 3375) ("Bagley's touchstone of materiality is a 'reasonable probability’ of a different result[.]”).

. After Minor's moved for a continuance, the trial court asked Minor is he had attempted to retain private counsel. Minor told the court he had contacted Claude Pinter to represent him. The trial court called Pinter, who said he had been contacted by Minor the day before but had not agreed to take on the representation.

. See Miss.Code Ann. §§ 41-29-113 (Supp. 2011) (listing certain controlled substances under "Schedule I”); 41 — 29—139(a)—(b) (Supp. 2011) (prohibiting the manufacture of controlled substances and prescribing the penalty for manufacturing a Schedule I controlled substance)

. See Miss.Code Ann. § 97-37-5(1) ("It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm....”).