CARLTON, J.,
for the Court:
¶ 1. Jason Earl Sanders was convicted in the Washington County Circuit Court of the manufacture of methamphetamine. The trial court sentenced Sanders to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with five years to serve, followed by five years of post-release supervision, followed by five years of unsupervised probation.
¶ 2. Sanders is represented by the Mississippi Office of Indigent Appeals. Sanders’s appellate counsel filed a brief with this Court pursuant to Lindsey v. State, 939 So.2d 743 (Miss.2005), and stated that no arguable issues existed for appeal.[1] Sanders’s appellate counsel also confirmed that he sent a copy of his brief along with correspondence informing Sanders that he found no arguable issues in the record to raise as error and that Sanders had a right to file a pro se brief to raise any perceived errors. A sufficient amount of time has passed, and we have received no pro se brief from Sanders. Upon review, we find no error and affirm.
*1260 FACTS
¶3. In September 2010, a grand jury before the Washington County Circuit Court indicted Sanders for the manufacture of methamphetamine, a Schedule II controlled substance, under Mississippi Code Annotated section 41-29-313 (Supp. 2011). Sanders’s trial subsequently commenced on May 17 and 18, 2011.
¶ 4. At trial, Lieutenant Evan Smith with the Washington County Sheriffs Department testified to patrolling an area of Washington County on December 10, 2009. While patrolling, Lieutenant Smith noticed a silver Buick parked on the side of Wilcox Road. The Buick was registered to Sanders. Sanders was seated in the driver’s seat, and Leslie Scott Walker was seated in the passenger seat. When approaching the vehicle, Lieutenant Smith noticed a strong fuel-like odor. Lieutenant Smith also noticed that the passenger, Walker, had some plastic bags, a plastic bottle, a can of “liquid fire,” and an empty Coleman fuel can in his lap or between his legs on the floorboard. Lieutenant Smith then saw Walker throw an item out of the car’s window. Lieutenant Smith detained Walker at the front of the Buick and retrieved the item that Walker threw from the car window, a plastic bottle, the contents of which were “bubbling.” Lieutenant Smith then detained Sanders, patted him down, and recovered six double-A lithium batteries from Sanders’s pocket. Lieutenant Smith called Sergeant Jimmy Branning, a narcotics agent with the Washington County Sheriffs Department, to come to the scene.
¶ 5. Sergeant Branning testified at trial. He testified that upon his arrival at the scene, he examined the plastic bottle and noticed that the bottle’s contents were “moving around” or “bubbling a little bit.” Sergeant Branning testified that the bottle appeared to be a meth lab. Sergeant Branning also looked inside the Buick and located the bottle of liquid fire on the passenger-side floorboard. Sergeant Branning collected samples of the contents of both the plastic bottle and the liquid-fire bottle and sent the samples to the state crime laboratory for testing. Sergeant Branning also collected the six lithium batteries found in Sanders’s pocket. Sergeant Branning testified that liquid fire contains sulfuric acid and is commonly used in the manufacture of methamphetamine. He further testified that lantern fuel and lithium strips from lithium batteries are also commonly used in the manufacture of methamphetamine.
¶ 6. Rob Reid, a forensic chemist with the Mississippi Crime Laboratory, testified that he concluded that the sample taken from the plastic bottle contained “a residue amount of ephedrine [or] pseudoephed-rine,” and the sample taken from the liquid-fire bottle contained “sulfuric acid.” Reid testified that ephedrine or pseu-doephedrine and sulfuric acid are commonly used in the manufacture of methamphetamine.
¶ 7. Walker, the passenger in Sanders’s car, also testified at trial. Walker testified that he and Sanders “had planned on making some crystal meth,” and that Sanders picked him up from his mother’s house on the day in question. Walker testified that he contributed the fertilizer, lye, and liquid fire. Walker explained that Sanders had a box of pseudoephedrine, and he asked Sanders to drive him to Walmart so that he (Walker) could get another box. According to Walker, he purchased another box of pseudoephedrine, and Sanders purchased lantern fuel and a pack of lithium batteries.
¶ 8. Walker testified that he and Sanders then went to Walker’s mother’s house to “mix it up,” and they later parked his car off of Wilcox Road to “filter it off’ and *1261 “blow it,” when Lieutenant Smith unexpectedly pulled up behind their vehicle. Walker acknowledged that he threw the bottle out of the window as Lieutenant Smith approached. According to Walker, Sanders participated in the whole process of making the methamphetamine.
¶ 9. After the State rested its case-in-chief but before Sanders testified, the State moved to exclude evidence that Sanders has a young child and that, prior to the incident at issue, Sanders suffered a stabbing during a robbery, leaving him disabled with difficulty walking. The State asserted that this evidence would only garner sympathy. Defense counsel argued that the evidence was relevant as to whether Sanders went into Walmart on the day in question. The circuit court noted that the evidence of Sanders’s stabbing and his resulting disabilities had previously come in through other witness testimony. Ultimately, the circuit court sustained the State’s motion as to evidence that Sanders had a young child, and stated, “We’ll just see how it goes with the [evidence of] disability.”[2]
¶ 10. Sanders then testified on his own behalf. He denied participating or assisting Walker in the manufacture of the methamphetamine, and he claimed instead that he merely provided Walker with a ride. Sanders acknowledged driving Walker to Walmart in his car, but Sanders testified that only Walker went inside the store. Sanders further claimed no knowledge as to what Walker had in the Walmart bags except for the two lithium batteries that Walker gave him. Sanders admitted providing Walker a ride in his car to Walker’s mother’s house, but Sanders denied going inside the house. Sanders also claimed no knowledge of Walker’s actions once inside the house. Sanders testified that he failed to notice Walker take anything inside or bring anything outside of his mother’s house. Further, Sanders claimed that Walker wore a large coat that must have concealed the items. Sanders testified that Walker got back in the car after leaving his mother’s house and that Walker asked Sanders to take him across town. Sanders testified that when he pulled the car off of Wilcox Road in order to urinate, Lieutenant Smith pulled up behind them.
¶ 11. Sanders claimed that Walker bought the batteries at Walmart and gave him two of them to use in his family’s camera. Sanders denied having any pseu-doephedrine pills, and he claimed that he saw the plastic bottle for the first time when Walker threw it out of the window. Sanders testified that he smelled gas on Walker, but he did not find that unusual because Walker worked as a mechanic and often smelled of gas. Sanders wholly denied participating in Walker’s manufacture of methamphetamine that day.[3]
¶ 12. At the conclusion of trial, the jury found Sanders guilty of the manufacture of methamphetamine. The trial court sentenced Sanders to fifteen years in the custody of the MDOC, with five years to serve, followed by five years of post-release supervision, followed by five years of unsupervised probation. Following a denial of his post-trial motions, Sanders now appeals.
*1262 DISCUSSION
¶ 13. In Lindsey, 989 So.2d at 748 (¶ 18), the Mississippi Supreme Court set forth the process that must be followed when appellate counsel for an indigent criminal defendant concludes no arguable issues exist on appeal. Specifically, the Lindsey court stated:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4), (7); see also [Smith v.] Robbins, 528 U.S. [259,] 280-81, 120 S.Ct. 746, 145 L.Ed.2d 756 [ (2000) ] (stating that “counsel’s summary of the case’s procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.”).
(2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
(5)Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
Lindsey, 939 So.2d at 748 (¶ 18) (internal citations and footnotes omitted).
¶ 14. Here, Sanders’s attorney indicated that he diligently and thoroughly scoured the record, searching for any arguable issues that could be presented in good faith on appeal, but he found none. Sanders’s attorney asserted that he specifically examined: (1) the reason for Sanders’s arrest and the surrounding circumstances; (2) any possible violation(s) of Sanders’s right to counsel, including ineffective assistance; (3) the entire trial transcript and record; (4) all rulings of the trial court; (5) possible prosecutorial misconduct; (6) all jury instructions; (7) all exhibits, whether admitted or not; (8) possible misapplication of the law in sentencing; (9) the sufficiency of the indictment; and (10) the weight and sufficiency of the evidence.
¶ 15. Sanders’s counsel requested that this Court allow an additional forty days for Sanders to file a pro se brief, should he so desire. Sanders’s counsel also stated that he sent a copy of his brief along with correspondence informing Sanders that he found no arguable issues in the record and advising Sanders of his right to file a pro se brief.
¶ 16. As of this date, this Court has not received any supplemental filing by Sanders. Furthermore, after thoroughly reviewing the record, we have found no arguable issues for our review. Finding no error that warrants reversal, we must affirm. Graves v. State, 78 So.3d 942, 943 (¶ 5) (Miss.Ct.App.2012); McClain *1263 v. State, 928 So.2d 210, 211 (¶ 8) (Miss.Ct. App.2006).
¶ 17. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF MANUFACTURE OF A SCHEDULE II CONTROLLED SUBSTANCE (METHAMPHETAMINE) AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, THEN FIVE YEARS OF UNSUPERVISED PROBATION, AND TO PAY A FINE OF $5,000 AND $300 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. "In Lindsey, 939 So.2d at 748 (¶ 18), the Mississippi Supreme Court modified the procedure that appellate counsel must follow when appointed counsel determines that there are no appealable issues within the record." Westbrook v. State, 75 So.3d 70, 70 n. 1 (Miss.Ct.App.2011).

. "We review the trial court's admission or exclusion of evidence for an abuse of discretion.” Smith v. State, 90 So.3d 122, 128 (¶ 22) (Miss.Ct.App.2012).

. " ‘[A]ny conflicts between witnesses’ accounts are properly weighed by the jury,’ which is 'the sole judge of the credibility of witnesses and the weight and worth of their testimony.’” Minor v. State, 89 So.3d 710, 717 (¶ 23) (Miss.Ct.App.2012).