# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00977-COA

CHARLES GREGORY DAVIS A/K/A CHARLES
G. DAVIS A/K/A CHARLES DAVIS A/K/A GREG
DAVIS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/10/2014 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN E. FARESE SR. |
| | JOSEPH WHITTEN COOPER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FALSE REPRESENTATIONS TO DEFRAUD THE GOVERNMENT, AND SENTENCED TO FIVE YEARS, WITH TWO AND ONE-HALF YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TWO AND ONE-HALF YEARS OF POST-RELEASE SUPERVISION; AND EMBEZZLEMENT, AND SENTENCED TO NINE YEARS, WITH TWO AND ONE-HALF YEARS TO SERVE AND SEVEN-AND-ONE-HALF YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONCURRENTLY, AND ORDERED TO PAY $18,814.80 IN RESTITUTION |
| DISPOSITION: | REVERSED AND REMANDED - 07/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**ISHEE, J., FOR THE COURT**:

¶1.     A DeSoto County Circuit Court jury found Charles Gregory Davis guilty of making a false representation with the intent to defraud the government, and embezzlement. As to making a false represenation with the intent to defraud the government, the trial court sentenced Davis to five years, with two and one-half years to serve in the custody of the Mississippi Department of Corrections (MDOC) and two and one-half years of postrelease supervision (PRS). As to the embezzlement conviction, the trial court sentenced Davis to ten years, with two and one-half years to serve in the custody of the MDOC and seven and one-half years of PRS.[1]   Both sentences were ordered to run concurrently. Davis was also ordered to pay $18,814.80 in restitution – $17,827.14 to the City of Southaven, Mississippi, and $987.66 to the State Auditor.

¶2.     Davis's posttrial motions were denied. Davis now appeals, asserting the trial court erred by: (1) denying his motion for a judgment notwithstanding the verdict (JNOV); (2) denying his motion for a change of venue; (3) improperly instructing the jury; (4) denying his motion for a mistrial; and (5) allowing a witness to testify as to the value of a vehicle.

## FACTS

¶3.     Davis was the mayor of the City of Southaven (the City) for approximately sixteen years. While Davis was mayor, with approval from the Board of Aldermen (the Board), he entered into a lease agreement for a Ford Expedition. Davis used the vehicle for business

---

[1] The circuit court ordered five of the years of PRS to be reporting, and five to be nonreporting.

purposes in his position as mayor.

¶4. According to the terms of the lease, when the lease ended, the City had the option to either purchase the vehicle for $10,000, sell the vehicle on its own, or have the leasing company sell the vehicle on behalf of the City. Regardless of whether the vehicle was sold, the City would be required to pay $10,000 at the end of the lease. If the City did not purchase the vehicle itself and the vehicle sold for more than $10,000, the profit would go to the City.[2] Before the lease expired, Davis paid the last installment of the lease and purchased the vehicle from the leasing company for $10,000. After Davis purchased the vehicle, he fueled his vehicle with gas from the City's fuel pump. However, he also submitted reimbursement forms for mileage incurred during his business travel.

¶5. The Board stated that it was not informed of the terms of the lease, and in turn the City argued that it was never given the opportunity to review its options with respect to the Ford Expedition. In contrast, Davis claims that he discussed the lease and its terms with the Board, and that he was not estopped from purchasing the vehicle.

¶6. The State indicted Davis and charged him with one count of false representations to defraud the government, one count of embezzlement, and one count of false pretenses.[3] The State proceeded with its theory that because the Board was not made aware of the terms of the lease, and as a result of Davis purchasing the vehicle for himself, the City was denied the option to exercise its rights in relation to the purchase of the vehicle. Further, the State

---

[2] Two witnesses testified to the estimated value of the vehicle, and opined that it was worth between $24,000 and $26,000.

[3] Eventually, the false-pretenses count was dismissed.

argued that Davis unlawfully "double dipped" when he traveled for the City in the Ford Expedition, which had become a personal vehicle, and obtained gasoline from the City pumps in addition to seeking mileage reimbursement for his travel.

¶7. After a trial, a jury found Davis guilty of false representation and embezzlement.

¶8. On appeal, Davis argues that the trial court erred in (1) denying his motion for a JNOV; (2) denying his motion for a change of venue; (3) improperly instructing the jury; (4) denying his motion for a mistrial; and (5) allowing a witness to testify as to the value of a vehicle. Finding that the trial court erred in denying Davis's motion for a change of venue, we reverse and remand.

## PROCEDURAL HISTORY

¶9. On February 19, 2014, Davis filed a motion for a change of venue. The motion was supported by affidavits from Ellen Jernigan, a local Republican Party leader; Mary Monteith, an attorney from Southaven; and Dr. Randall Huling, a physician from Olive Branch and a former member of the Southaven Board of Aldermen. The motion also had attached, as exhibits, copies of numerous news reports about Davis.

¶10. On February 20, 2014, a hearing was conducted on the motion during which Jernigan testified that the charges against Davis were prominently discussed in DeSoto County and that many in the community had prejudged Davis to be guilty of the charges against him. When asked whether Davis could receive a fair trial in DeSoto County, Jernigan responded by stating, "Oh no, sir. I think that would be like feeding him to a tank full of sharks."

¶11. At this same hearing, the State failed to put forth any witnesses to rebut Davis's

4

showing that he was entitled to a change of venue. The State did, however, argue that it believed that a fair jury could be impaneled and requested to go forward with voir dire. The State expressed that it would concede the motion if a fair jury could not be impaneled. The trial court stated that it would reserve its ruling until after voir dire, reasoning in part that the motion for a change of venue was filed only four days before the scheduled trial date.

¶12. However, on February 24, 2014, the anticipated trial date, the State filed a motion to continue the trial, citing the unavailability of a necessary witness. The motion was discussed in open court. Davis agreed that the witness was necessary for his defense as well. The trial court granted the motion and continued the case until June 9, 2014. At this same hearing, with respect to the motion for a change of venue, the trial court stated that it would consider "whether [it] need[ed] to reconvene the hearing and have the State present [its] witnesses that would counter or be contrary to the witnesses [Davis had] presented to determine if [it could] make a ruling on the motion [for change of venue] prior to convening a jury panel." The trial court followed up and stated that "it may be judicially efficient to reconvene the hearing."

¶13. On June 9, 2014, the trial court began voir dire without reconvening a hearing, and the State never put forth witnesses to rebut the presumption that arose with Davis's application for a change of venue. When the trial court engaged in voir dire and asked whether any of the venire had read, seen, or heard anything about the case, sixty-two out of eight-eight members of the venire responded affirmatively. When the trial jury was impaneled, nine of the twelve jurors plus the two alternates were among those who had stated during voir dire that they had read, seen, or heard something about Davis's case.

5

¶14. After jury selection, Davis renewed his motion for a change of venue. The trial court responded that

> for the record . . . the better practice . . . would have been to reconvene the hearing, given that the [d]efense had come forward with their affidavits and their witnesses so that a ruling could be made ahead of time in regard to the motion. Of course, if the motion is denied at that point, we still find ourselves in the situation of having to see if we can seat a jury, knowing that this is a high profile case that's received a lot of attention. As we sit here today, we called in a substantial number of additional jurors to take into account the concern.

The trial court ultimately denied the change of venue, and the jury found Davis guilty of making a false representation with the intent to defraud the government, and embezzlement. After Davis's sentencing and the denial of his posttrial motions, this appeal ensued.

## LAW AND DISCUSSION

¶15. In *Johnson v. State*, 476 So. 2d 1195, 1210 (citing *Eddins v. State*, 110 Miss. 780, 783, 70 So. 898, 899 (1916)), the Mississippi Supreme Court explained:

> The right to trial by an impartial jury is guaranteed by the organic law of the state, and when it is doubtful that such a jury can be obtained in the county of the venue of the [crime], the person on trial . . . is but asking for his rights when he requests a change of venue[;] there is no imaginable reason to refuse, except, possibly, a slight additional cost to the county.

¶16. Mississippi's change-of-venue statute is found in Mississippi Code Annotated section 99-15-35 (Rev. 2015). It states:

> On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the

6

costs in the case, as may be proper.

¶17. A change of venue is at "the discretion of the trial [court], and [its] ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Beech v. Leaf River Forest Prods.*, 691 So. 2d 446, 448 (Miss. 1997). "Where . . . the evidence is conflicting on the question of whether or not the defendant could receive a fair and impartial trial, [an appellate c]ourt will generally defer to the considered opinion of the trial [court]." *Burrell v. State*, 613 So. 2d 1186, 1190 (Miss. 1993).

¶18. This Court explained the analysis for a motion to change venue in *Stewart v. State*, 29 So. 3d 12, 14 (¶6) (Miss. Ct. App. 2008), as follows:

> Under Mississippi law, upon a proper application for a change of venue a presumption arises that an impartial jury cannot be obtained. A proper application for change of venue is made by making a motion supported by the affidavits of two or more witnesses in conformance with the requirements of [Mississippi Code Annotated section] 99-15-35 [(Rev. 2015)]. Furthermore, our supreme court has identified several factors that, when present, make the presumption for a change of venue irrebuttable. These are:
>
> (1) Capital cases based on considerations of a heightened standard of review;
>
> (2) Crowds threatening violence toward the accused;
>
> (3) An inordinate amount of media coverage, particularly in cases of
>
> > (a) serious crimes against influential families;
> >
> > (b) serious crimes against public officials;
> >
> > (c) serial crimes;
> >
> > (d) crimes committed by a black defendant upon a white victim;

(e) where there is inexperienced trial counsel.

(Internal citations omitted).

¶19. In reviewing whether the trial court abused its discretion in denying a change of venue, "we look to the completed trial, particularly including the voir dire examination of prospective jurors, to determine whether the accused received a fair trial." *Lutes v. State*, 517 So. 2d 541, 546 (Miss. 1987) (citation omitted).

¶20. As pointed out by Davis, the procedure employed by the trial court in the instant case has been criticized by the Mississippi Supreme Court, which has stated that "the trial judge should not wait to see if voir dire cures doubts created at a venue hearing." *Weeks v. State*, 493 So. 2d 1280, 1287 (Miss. 1986); *see also Fisher v. State*, 481 So. 2d 203, 223 (Miss. 1985) ("Absent unusual circumstances, the trial judge should rule on the motion at the conclusion of the venue hearing and in any event prior to the summoning of the prospective jurors for trial.")

¶21. The State, acknowledging the cases relied upon by Davis, argues that the supreme court has also held that one way to rebut the presumption that an impartial jury cannot be obtained is "by proving from voir dire that the trial court impaneled an impartial jury." *Welde v. State,* 3 So. 3d 113, 118 (¶23) (Miss. 2009) (citation omitted). However, the State's reliance on *Welde* is misplaced because the State in *Welde* presented five witnesses each testifying that a fair and impartial jury could be found. *Id.* at 119 (¶25). Only after hearing the State's witnesses to rebut the presumption that arose with the application of a motion for a change of venue did the trial court in *Welde*, on its own accord and not at the behest of the

8

State, reserve its ruling on the motion pending the voir dire examination. *Id.* Based on its conclusion that the trial court took appropriate steps to ensure a fair and impartial jury was impaneled, the supreme court found that the trial court did not abuse its discretion. *Id*. at (¶29).

¶22. In the case at bar, we find that the trial court erred in denying the motion for a change of venue in light of the fact that the State failed to rebut the presumption that arose upon Davis's application for a change of venue. Unlike in *Welde*, the State simply requested to proceed with voir dire without putting forth any witnesses or submitting any affidavits. The trial court was well aware of the fact that the media had focused on Davis and had produced not only news stories about the case at bar, but also stories about other matters relating to Davis, including his arrest and conviction for passing a stopped school bus; his divorce; his sexual orientation; and his lawsuit with the State Auditor's office. These articles were circulated by local newspapers and covered by television stations based in nearby Memphis, Tennessee.

¶23. As explained by the supreme court:

> On the one hand, we regard freedom of the press as essential to the security of our democratic society. At the same time our law vests in each person charged with a crime the right to be tried in the courtroom, not the newspaper, the right to have his or her guilt pronounced only by the jury, not the media. Our law has provided a mechanism for accommodation of these rights: the change of venue.

*Fisher*, 481 So. 2d at 223. Mississippi caselaw also suggests that the trial court should be prepared to change the venue for a case that has an inordinate amount of media coverage, particularly in cases of serious crimes against public officials, which is present in the instant

9

case. *See Stewart*, 29 So. 3d at 14 (¶7). In the case at bar, we reiterate that sixty-two out of eighty-eight members of the venire responded affirmatively to having seen publicity relating to Davis. When the jury was impaneled, nine of the twelve jurors plus the two alternates were persons who had stated during voir dire that they had read, seen, or heard something about the case. With these numbers, the trial court should have granted, and the State should have conceded as it suggested it would, the change-of-venue motion.

¶24. Furthermore, procedurally, it is evident that the trial court was aware of its mistake in failing to rule on the change-of-venue motion prior to the trial date. The trial court's comments quoted *supra* reveal it was cognizant of the following concerns: the inefficiency of the court in proceeding with voir dire without having already ruled upon the motion to change venue; the State's having never rebutted Davis's witness and affidavits; the undeniable amount of attention Davis had received prior to trial, most of which was negative; and the need to pull from a larger jury pool to "take into account the concern" for the amount of publicity. The culmination of the facts make it "clear[] . . . there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Beech*, 691 So. 2d at 448.

¶25. Finally, we are concerned with the State's approach of relying solely on voir dire as a means of rebutting the presumption with respect to a change of venue. We can find no jurisprudence supporting this strategy, and if we were to condone it, section 99-15-35 would serve no purpose. It is also naive to believe that the amount of time and costs accrued in the decision to attempt to impanel a jury does not create a momentum to move forward to resolve

the case at hand, potentially at the expense of safeguards that are necessary to protect the defendant's right to a fair and impartial jury. In addition, Davis's trial strategy is arguably adversely affected since he did not know where his trial would be held until the morning of the trial, specifically when the trial court denied the motion to change venue after jury selection.

¶26. For the foregoing reasons, we find the trial court erred in denying Davis's motion for a change of venue and reverse and remand the trial court's judgment. In light of our findings, we need not discuss the other assignments of error Davis has raised on appeal.

¶27. **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., AND BARNES, J., CONCUR. FAIR AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON AND GREENLEE, JJ., NOT PARTICIPATING.**