# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00924-COA

ANTONIO HALL A/K/A ANTONIO KENTRELL HALL          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2017 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WANDA TURNER-LEE ABIOTO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. On July 14, 2015, a Tate County grand jury indicted Antonio Hall for one count of conspiracy to commit murder in violation of Mississippi Code Annotated section 97-1-1 (Rev. 2014), and for one count of murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014). Following a jury trial, which began on May 1, 2017, Antonio was acquitted of the conspiracy charge, and the jury found him guilty of first-degree murder on May 5, 2017. Following his conviction, Antonio filed a motion for recusal, which the circuit court denied. Antonio also filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial. After a hearing on his post-trial motion for a JNOV or a new

trial, the circuit court rendered final judgment on August 15, 2017, and sentenced Antonio to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Antonio appealed, and, finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 8, 2015, James Shorty and Antonio Hall visited Cauthen Circle (Newton), a housing community located in Senatobia.  The men claimed they were there to visit the mother of James Hall's daughter. For unclear reasons, the men stopped the vehicle outside of the home of Ludean Carter, an elderly resident.  Ms. Carter testified that she did not know the men and told them to move out of her yard.  Ms. Carter claims that one of the men yelled back an expletive and instructed her to return to her home; she acquiesced. Shortly after the exchange, eight eyewitnesses testified that a physical altercation ensued between Darrius "Dee" Brooks (Ms. Carter's nephew) and James Shorty. Testimony indicated that during the fight, Antonio retrieved a handgun from the vehicle and shot an undetermined number of bullets at a bystander named Travis Roberts.[1]  Roberts was shot in the chest and pronounced dead shortly thereafter.  When law enforcement arrived, a host of eyewitnesses agreed to review photographic lineups and identified Antonio as the shooter.

¶3.     On July 14, 2015, the Tate County grand jury indicted Antonio Hall, along with James Hall and James Shorty, for one count of conspiracy to commit murder and one count of deliberate-design murder in connection with the death of Travis Lamar Roberts. Arrest

---

[1] Testimony conflicted regarding to the number of shots fired by Antonio Hall. However, it was confirmed by Antonio's own testimony and that of several eyewitnesses, that he did indeed fire the shots.  Also, contrary to the overwhelming eyewitness testimony, Antonio claims he shot into the air and not at Roberts.

2

warrants were subsequently issued for all three men.

¶4. After negotiations, James Shorty and James Hall pled guilty to a reduced charge of accessory-after-the-fact on May 22, 2017. On June 1, 2017, they were sentenced, respectively, to twenty years in the custody of the MDOC with ten years to serve, and placed on ten years of post-release supervision. Antonio moved forward with a jury trial.

¶5. Prior to trial Antonio filed a host of motions, including a motion to change venue, which was filed on April 13, 2017, and a discovery request. Antonio asserted that he could not get a fair trial in Tate County, citing media coverage of the case and violent threats against the defendants' families. On April 19, 2017, the court held a hearing to address pre-trial motions and ultimately deemed it best to hold the "Motion for Change of Venue" in abeyance until after the jury was impaneled. During the hearing, the court inquired as to whether there were any discovery issues it needed to address. Antonio's attorney responded that there were not.

¶6. Dissatisfied, Antonio filed a second "Request for a Change of Venue" on April 25, 2017, again citing violence against the defendants' families along with purported familial connections among the jurors, the defendants, and the victim. The court ultimately determined these issues were insufficient to warrant a change of venue and denied Antonio's motions. Accordingly, the case proceeded in Tate County.

¶7. On April 25, 2017, five days before trial, Antonio also filed a second "Request for Discovery" and a "Motion for an Omnibus" hearing, making several evidentiary requests and alleging the State provided him with incomplete discovery. Antonio further requested

3

funding for a ballistic expert and noted that the State had not provided the full pathology report for the deceased, Travis Roberts. As a part of his numerous discovery requests, Antonio requested "any and all police reports, investigative reports, evidence and supplemental reports or the like made in conjunction [to] reports of violence that occurred in Newton on February 6, 2015, February 7, 2015, and February 8, 2015." Although citing the reports as irrelevant, the State provided Antonio with the requested activity logs. Antonio also requested NCIC reports[2] on fourteen of the State's potential witnesses. The State provided NCIC reports for Antonio's co-defendants James Shorty and James Hall but responded that it did not have reports for the other twelve potential witnesses listed. The court addressed the motions on May 1, 2017, prior to the commencement of the trial.

¶8. On May 1, 2017, Antonio's trial ensued. The jury heard sworn testimony from over thirty witnesses over the course of the proceedings—including Antonio. At the conclusion of the State's case in chief, Antonio motioned the court for a directed verdict. The court denied the motion and allowed the trial to proceed. A unanimous jury acquitted Antonio of conspiracy to commit murder (Count I) but convicted him of murder (Count II) on May 5, 2017. On May 30, 2017, Antonio filed a motion for JNOV or, alternatively, a new trial, which the court denied after a hearing on the matter. Additionally, Antonio filed another post-trial motion for recusal, which the court also denied. On August 15, 2017, the court rendered a final judgment and sentenced Antonio to life imprisonment in the custody of the

---

[2] The National Crime Information Center (NCIC) is a clearing house of criminal data administered by the Criminal Justice Information Services Agency of the Federal Bureau of Investigation.

4

MDOC. Aggrieved, Antonio Hall now appeals.

**DISCUSSION**

¶9.     In his appeal, Antonio assigns a total of eighteen errors related to the denial of pre-and

post-trial motions, as well as voir dire and perceived evidentiary violations. Given the

myriad of issues raised in the case sub judice, we have categorized and reorganized

Antonio's assignments of error as necessary to facilitate clarity and efficiency. Likewise,

each issue is restated within its respective category for ease of reference.

**I.     Venue**

*Issue 1: Whether the circuit court erred in denying Antonio's requests for a change of venue.*

¶10.    "A change of venue is at 'the discretion of the trial court, and its ruling thereon will

not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion

or that the discretion has not been justly and properly exercised under the circumstances of

the case.'" *Davis v.* State, 196 So. 3d 194, 198 (¶17) (Miss. Ct. App. 2016) (quoting *Beech*

*v. Leaf River Forest Prods*., 691 So. 2d 446, 448 (Miss. 1997)).

¶11.    "The accused has a right to a change of venue when it is doubtful that an impartial

jury can be obtained." *Davis v. State*, 767 So. 2d 986, 993 (¶16) (Miss. 2000).

¶12.    Mississippi law sets forth a procedure for defendants to establish a requisite

presumption that an impartial jury is beyond reach in their current venue. "[A] motion for

change of venue must be in writing and supported by affidavits of two or more credible

persons showing that the defendant cannot receive an impartial and fair trial in that particular

county because of prejudgment of the case or grudge or ill will to the defendant in the mind

of the public." *Gray v. State*, 799 So. 2d 53, 62 (¶33) (Miss. 2001) (internal quotation marks omitted) (quoting *Davis*, 767 So. 2d at 993 (¶15)); *see* Miss. Code Ann. §99-15-35 (Rev. 2015).

¶13.    This presumption, however, may be rebutted by the State upon proof that an impartial jury was impaneled during voir dire.  *Holland v. State*, 705 So. 2d 307, 336 (¶97) (Miss. 1997).

¶14.    In his first assignment of error, Antonio argues that the court erred in denying his pre-trial "Motion for Change of Venue."  In his motion, Antonio cited several local news outlets reporting the murder.  Consistent with the procedure outlined above, Antonio provided supporting affidavits from his mother (Arbedella Armstrong) and James Shorty's mother (Ruthie Lee Hall).  Antonio's supporting affidavits and arguments at the motion hearing, much like those on appeal, rely primarily on anticipated gang retaliation and threats of violence made against Antonio's family.  The court concluded that a change of venue would not "cure or prevent alleged retaliation" and reiterated that the purpose of a venue change is to "be certain that the defendant can obtain a fair and impartial jury."  At the venue hearing, though seemingly unpersuaded by Antonio's arguments, the court, out of an "abundance of caution," held the motion in abeyance until after voir dire.

¶15.    Antonio now argues that the court erred by waiting until after voir dire to grant a ruling on the venue motion, citing the State's alleged failure to "rebut the assertion of violent threats and actual violence against the family member of [Antonio]."  Antonio relies on *Davis*, 196 So. 3d at 199 (¶22), where this court found that "the trial court erred in denying

6

the motion for change of venue in light of the fact that the State failed to rebut the presumption that arose upon Davis's application for a change of venue." In *Davis*, the defendant was a public official entangled in a scandal involving the misuse of public funds. *Id.* Davis was able to establish that there had been a plethora of news coverage related to his arrest, conviction, divorce, sexual orientation, and even an unrelated lawsuit; the stories were heavily televised and run in the local newspapers. *Id.* Antonio's request based on threats against third parties does not compare.

¶16. When "reviewing whether the trial court abused its discretion in denying a change of venue, 'we look to the completed trial, particularly including the voir dire examination of prospective jurors, to determine whether the accused received a fair trial.'" *Id.* at 198 (¶19) (quoting *Lutes v. State*, 517 So. 2d 541, 546 (Miss. 1987)). In the present case, the court did not err by determining whether a fair and impartial jury could be impaneled before making a determination with regard to venue. Antonio failed to provide a sufficient basis for his motion, and voir dire ultimately amassed an adequate cross-section of fair and impartial Tate County jurors for impanelment. Some people were indeed removed for cause while others were deemed capable of fairness and impartiality despite their loose affiliations with the victim or other relevant parties.

¶17. "[O]ur supreme court has identified several factors that, when present, make the presumption for a change of venue irrebuttable," including the following:

> (1) capital cases based on considerations of a heightened standard of review;
> (2) crowds threatening violence toward the accused; [or]
> (3) an inordinate amount of media coverage, particularly in cases of
>     (a) serious crimes against influential families;

7

(b) serious crimes against public officials;
(c) serial crimes;
(d) crimes committed by a black defendant upon a white victim; [or]
(e) where there is inexperienced trial counsel.

*Id.* at 198 (¶18).

¶18.    Antonio also argues that there was an irrebuttable presumption that a change of venue was warranted based on the news coverage of the murder and the portrayal of Antonio and his co-defendants as gang members.[3]  However, the record does not support this assertion. During the hearing on the motion for a venue change, Antonio's trial counsel admitted that with regard to media coverage, "there [had] not been anything recent" but anticipated that the impending trial date would "garner further media attention."  In fact, the story had not been covered in the media at all since the initial incident, two years prior to the venue hearing.  Based on the above facts, we find the circuit court did not abuse its discretion and affirm the court's denial of Antonio's motion for a change of venue.

## II.    Alleged Discovery Violations

¶19.    The Court deems it appropriate to address issues 2 and 3 collectively.

*Issue 2: Whether the State's failure to comply with the rules of discovery requires reversal.*

¶20.    In his second assignment of error, Antonio alleges the State failed to comply with basic discovery requests for (a) police crime logs, (b) witness NCIC reports, (c) Travis

---

[3] Antonio's initial assertion that the State did not adequately rebut his alleged initial presumption contradicts the argument that Antonio's presumption was irrebuttable. The two relevant standards are mutually exclusive; one creates an irrebuttable presumption whereby the State could not rebut Antonio's change of venue motion and the other does not. Antonio argues that both apply to a singular set of facts.

8

Robert's GSR kit, and (d) gang activity reports. Antonio argues the information was potentially exculpatory and withheld in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[4]

¶21. "A trial court's judgment is presumptively correct and the appellant must demonstrate reversible error to this Court. *Lenard v. State*, 812 So. 2d, 1097, 1102 (¶18) (Miss. Ct. App. 2001) (citing *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)). Part of the appellant's burden is to support the argument of the issues with reasons and authorities." *Id*. (citing *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982)). Antonio's brief raises a number of other lone, alleged discovery violations. The additional issues are comprised of mere assertions. Absent the required reference to any supporting authority, statutes, or portions of the record that Antonio relied on, we decline review of the purported errors. M.R.A.P. 28(a)(7).

### A. Daily Police Crime Logs

¶22. Antonio's second discovery request asked the State to provide "any and all police reports, investigative reports, evidence and supplemental reports or the like made in conjunction reports of violence that occurred in Newton (Cauthen Circle) February 6, 2015, February 7, 2015, and February 8, 2015, that was referenced as being a part of the incident occurring on February 8, 2015 resulting in the death of Travis Roberts." Citing *Brady*, Antonio alleges that although the state provided activity logs for the specified dates, some

---

[4] *Brady* was a seminal United States Supreme Court case in which the Court established the requirement for the prosecution to disclose and turn over all evidence that might exonerate a criminal defendant (i.e., exculpatory evidence); the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*

possibly exculpatory logs were intentionally excluded and prejudiced Antonio's theory of self defense.

¶23. In agreement with the State's response, we find the record reveals this issue is without merit. As an appellate court, we are bound to "matters contained in the official record and not [mere] assertions in briefs. 'Facts asserted to exist must and ought to be definitely proved and placed before the Court by a record, certified by law; otherwise, we cannot know them.' The Court 'does not act upon innuendo and unsupported representation of fact . . . .'" *McDonald v. State*, 807 So. 2d 447, 451 (¶14) (Miss. Ct. App. 2001) (quoting *Colenburg v. State*, 735 So. 2d 1099 (¶6) (Miss. Ct. App. 1999)).

¶24. Daily logs provided in response to Antonio's request were admitted through the testimony of Lieutenant Billy Burrow of the Senatobia Police Department. Lieutenant Burrow testified that the shooting of Travis Roberts was the only shooting incident reported in the Newton area on the dates requested. Antonio's request specifically asked for reports related to the death of Travis Roberts, and Antonio fails to point to any evidence or testimony that relevant records existed and were not turned over. Antonio's first *Brady* claim fails.

   B.  NCIC Reports

¶25. On May 1, 2017, Antonio filed a motion to compel the production of NCIC reports containing the criminal and juvenile histories of each of the State's witnesses. Antonio alleges that by denying his motion, the circuit court and prosecution deprived him of "material evidence" affecting the credibility of the State's witnesses in violation of *Brady*

10

and *Giglio v. United States*, 405 U.S. 150, 154 (1972).[5]

¶26. "It is well established that the State ha[s] [a] duty to turn over all exculpatory material relevant to [a defendant's] case." *Howell v. State*, 989 So. 2d 372, 378 (¶13) (Miss. 2008). "There is little dispute that a government witness's prior criminal conduct may be used for impeachment purposes and should be disclosed by the State." *Minor v. State*, 89 So. 3d 710, 714 (¶10) (Miss. Ct. App. 2012). In *Minor*, we addressed a very similar issue regarding a defendant's motion for the production and disclosure of criminal records of the State's witnesses. *Id.* at 714 (¶8). This Court held that "even where impeachment material exists, nondisclosure by the State does not necessarily establish that the outcome was unjust." *Id.* at 714 (¶11). Minor's *Brady* claim failed because he failed to show any evidence that the witness in question had any felony convictions, thus there was no showing that the State suppressed evidence. *Id.* at 714 (¶12).

¶27. The State contends it obtained and provided NCIC reports for the accused and his co-defendants and further argues that Antonio provided no evidence that any of the State's witnesses had criminal histories that should have been disclosed. Antonio provided nothing to counter the State on this issue. Again, Antonio's *Brady* claim fails.

        C.    GSR Kit

¶28. Antonio cites *King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995) (restating the duty of the prosecution to disclose exculpatory evidence to criminal defendants as required by *Brady* and *Giglio*), once more alleging the State withheld exculpatory evidence by failing to

---

[5] *Supra* note 3.

11

submit the decedent's GSR kit for gun-residue testing. Again, the record does not support Antonio's claim. At trial, forensic expert David Whitehead of the Mississippi Forensics Lab testified that it is standard procedure to collect GSR samples during autopsies, but since 1998 the agency policy has been not to perform tests on victim kits. With gunshot victims in particular, the test only reveals the obvious; to be shot, the victim had to be in the environment of a discharged weapon. Whitehead further explained that victims' GSR kits are only worked up upon special request. Antonio presented no evidence that the GSR kit would have had any evidentiary or exculpatory value; in fact, according to Antonio's own testimony, no one else at the scene brandished a weapon. Although futile, Antonio was still free to request the test by motion to the court. Antonio made no such request, and, accordingly, this claim was waived and fails.

### D. Gang Activity Reports

¶29. Additionally, Antonio, for the first time on appeal, argues that the State improperly denied his request for "any and all police reports, investigative reports, evidence and supplemental reports or the like made in conjunction [with] reports of violence that occurred from February 1, 2015 in Newton through February 10, 2015, as it relates specifically to violent actions of gang activity." In response, the State asserted the request was "overly broad and irrelevant." A review of the record reveals that during a hearing on pending pre-trial motions, held April 19, 2019, the following exchange occurred among the Court, the State, and Antonio's attorney, Ms. Abioto:

The Court: You have a discovery issue?

12

Abioto: Yes. I had made a request for some supplementary discovery, but I'll take that up if the State --

The Court: If you all cannot resolve it, I'll be happy to resolve that by telephone conference for you after today.

Abioto: Yes, Your Honor. Thank you.

The Court: All right.

The State: Your Honor, and just for the Court's benefit, Ms. Abioto provided that to me after she filed all these motions. We believe that most of what she's asking for is irrelevant and won't be necessary for the purpose of this trial and certainly could have been asked for several months, if not a year or so ago, but we –

The Court: If you can't resolve it, get with my court administrator and let's have a telephone conference and we'll solve that.

Abioto: Okay. Thank you, Your Honor, and I have no further motions.

¶30. Following the above exchange, the record does not reflect any further mention of this discovery issue by Antonio's counsel. No motion to compel was filed, and no objection was raised prior to or during the trial. Therefore, the issue was not considered by the circuit court and is procedurally barred from consideration on appeal. *Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012); *see also Terrell v. State*, 237 So. 3d 717 (Miss. 2018) ("An established principle of appellate review is that issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal."). Aside from the procedural bar, we find no reversible error. This claim fails as well.

*Issue 3: Whether the circuit court failed to conduct a proper omnibus hearing.*

¶31. The third assignment of error cites the circuit court's failure to hold a mandatory pre-trial omnibus hearing as reversible error. Antonio's motion, which he filed on April 25,

13

2017—five days before trial—sought an omnibus hearing to resolve complaints related to the alleged discovery violations addressed above. Having conducted a pre-trial motion hearing six days before Antonio filed the omnibus request, the circuit court elected to resolve the discovery complaints as a preliminary matter on the day of trial.[6] Citing "Rule 4.09, Uniform Criminal Rules of Circuit Court Practice," Antonio argues the court was required to hold an omnibus hearing at least three days before his trial. The State's response dismissed the claim as meritless, correctly noting that the Uniform Rules of Circuit and County Court Practice were in effect at the time of Antonio's trial. *Gonzales v. State*, 243 So. 3d 244, 246 n.1 (Miss. Ct. App. 2017). In his reply, Antonio asserted the error as a violation of the Uniform Rules of Circuit and County Court Practice, which at the time provided that "[a]n omnibus hearing *may* be held at request of an attorney . . . ." URCCC 9.08 (emphasis added).

¶32. Antonio was not entitled to the hearing because the applicable rule is permissive. Also, the court had already held a hearing on Antonio's pre-trial motions a mere six days before he filed the request for a second hearing. During the initial pre-trial hearing, the court entertained and resolved Antonio's issues as it would have in an omnibus hearing; Antonio was not entitled to a second pre-trial hearing to address the same or similar issues he failed to raise initially. Furthermore, Antonio fails to cite any actual prejudice that resulted from the court's failure to hold the requested omnibus hearing, and his claim is without merit.

---

[6] During the initial hearing on pre-trial motions, held April 19, 2017, the court offered to resolve any discovery issues by telephone conference and instructed Antonio's counsel to contact the court administrator if court assistance was necessary to facilitate resolution of any discovery issues.

14

¶33. After reviewing the record, we find no reversible error in Antonio's claims of alleged discovery violations.

### III. Jury Impanelment

*Issue 4: Whether the jury was properly impaneled.*

¶34. In his fourth assignment of error, Antonio alleges that the jury impanelment was improper and not in accordance with Mississippi Code Annotated section 13-5-26 (Rev. 2012), which states that "jurors drawn for jury service shall be assigned at random by the clerk to each jury panel in a manner prescribed by the court." Antonio's claim is based on new number assignments given to three tardy members of the venire—Juror 241, Juror 242, and Juror 243. The potential jurors were assigned new numbers by the circuit clerk consequent to their late arrival during the jury-qualification phase. Antonio fails to point to any statute or other authority prohibiting the reassignment. As noted by the State, Mississippi Code Annotated section 13-5-87 (Rev. 2012) provides:

> Laws as to listing, drawing, summoning and impaneling of juries are directory. All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely, and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and it shall have the power to perform all the duties devolving on the jury.

¶35. When overruling Antonio's motion for a mistrial based on the perceived error, Judge Chatham noted that at least one of the jurors, Juror 242, was excused for cause after stating that he could not be fair and impartial. The selected jurors were thoroughly questioned and deemed qualified for service during the voir dire examination and prior to being sworn in. As such, we find the jury was properly impaneled and that this issue is without merit.

15

## IV. Alleged Juror Misconduct

¶36. The Court deems it appropriate to address Issues 5, 6 and 7 collectively.

*Issue 5: Whether jurors committed misconduct by providing false information during voir dire.*

*Issue 6: Whether a juror committed misconduct by failing to acknowledge that he knew certain witnesses.*

*Issue 7: Whether a juror committed misconduct by failing to disclose that a family member had been a victim of a violent crime.*

¶37. Antonio alleges four jurors committed misconduct. Antonio was only able to provide evidence in support of two of the four allegations during his hearing on the motion for a new trial and on appeal; the remaining two were purely based in conjecture and speculation. As such, we will only address the substantiated alleged omissions.

¶38. Juror 13, Ralph Williams, did not disclose that he knew witness Robert Carter during voir dire. Carter and Williams attended different churches but sang in the same male chorus on most fourth Sundays when Williams visited Carter's church. They became Facebook friends after the trial.

¶39. Juror 32, Janice Stigler, did not disclose that her sister was a victim of a violent crime during voir dire. Stigler's sister, Hazel Stigler, was kidnaped and assaulted in June 1987.

¶40. In *Green v. State*, No. 2017-KA-01758-COA, 2019 WL 2590865, at *4 (¶21) (Miss. Ct. App. June 25, 2019), this Court addressed a similar issue of juror misconduct and held that

> where, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited,

16

the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond.

(Quoting *Doss v. State*, 882 So. 2d 176, 181 (¶5) (Miss. 2004)) (emphasis omitted).

¶41. We find that neither of the omissions cited by Antonio would provide a valid basis for a challenge for cause. Antonio does not allege or cite evidence that either juror was improperly influenced or that he was prejudiced by the omissions. Antonio does not point to any evidence that the jurors in question were not fair and impartial. Thus, any error with regard to this issue is harmless.

### V. Bias/Recusal

¶42. The Court deems it appropriate to address Issues 8, 9 and 10 collectively.

*Issue 8: Whether the court displayed bias against Antonio.*

¶43. Antonio's eighth assignment of error alleges that the court displayed bias against him by (a) improperly limiting Antonio's voir dire and (b) improperly instructing the circuit clerk to deny Antonio subpoena power and failing to issue an order reflecting the denial. We decline to address the three additional arguments regarding the court's alleged bias toward Antonio. Although enumerated in his brief, Antonio effectively abandons the other contentions by failing to discuss them beyond mere mention. Antonio provides no rationale or citations to authorities, statutes, or parts of the record regarding these issues; as such, they are procedurally barred. M.R.A.P. 28(a)(7).

17

### A. Voir Dire Limitation

¶44.    Citing *Jones v. State*, 669 So. 2d 1383, 1387 (Miss. 1995), Antonio argues that the court "diminished the respect and trust of the jurors" by improperly restricting voir dire.[7] Antonio further claims that the court threatened trial counsel with contempt during voir dire, indicating to the jury that "the judge was predisposed in favor of a conviction, and rendering the trial unfair." Antonio's claim references the following colloquy between defense counsel and the circuit court.

Abioto:        I know you all are probably saying what about all these binders and how long are we really going to be here, and I can't tell you, but I know I'm going to do my job.  So if this trial went beyond say the end of the week, would anyone have a problem with going into next week?
Okay.  Let's talk about that because it's important that we tell you the truth.

The Court:    Ms. Abioto, it's not going to happen, so you don't need to question them about that.

Abioto:        You're saying I can't put on my testimony, Your Honor?

The Court:    I don't know what testimony you're talking about, but this trial is not going to go into next week, so there's no need of questioning the panel about it.

Abioto:        So I can't ask them – I just want to be sure I can't ask them any question about if it went into Monday or Tuesday?

---

[7] Ronald Jones argued that the trial court was actively involved in the trial on behalf of the prosecution and thereby exhibited bias that deprived Jones of his constitutional right to a fair trial. *Id*. at 1386.  The Mississippi Supreme Court rejected each of Jones's claims related to this issue and held that the cases cited in support of his argument were inapplicable because they involved statements made by the court in the presence of the jury; in Jones's case, the alleged biased comments were made outside of the jury's presence.  *Id*. at 1387. Like Jones, Antonio argues the court's comments to defense counsel during voir dire exhibited bias against the him in the presence of the jury.

| | |
|---|---|
| The Court: | Why do you need to ask them that if it's not going to happen? |
| Abioto: | Because I'm protecting my client, Your Honor. That's all I'm doing. I'm not trying to be disrespectful. I just need to know that if anyone had any problem-- |
| The Court: | You are getting real close. |
| Abioto: | Yes? I'm sorry, I didn't hear you. |
| The Court: | I said you are getting real close. |
| Abioto: | To what? |
| The Court: | I'm trying to give you a fair ruling on the case, but I'm not going to allow you to question the jury about the trial going into next week. |
| Abioto: | Thank you, Your Honor. |

In response, the State argues that the circuit court was within its discretion and that the court's limitation on the defense's voir dire questioning should not warrant reversal absent proof of "actual harm or prejudice" that resulted therefrom. *Morris v. State*, 843 So. 2d 676, 678 (¶3) (Miss. 2003).

¶45.    "[V]oir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Foster v. State*, 639 So. 2d 1263, 1274 (Miss. 1994) (internal quotation marks omitted). "The standard of review in examining the conduct of voir dire is abuse of discretion. Abuse of discretion will only be found where a defendant shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint of the defense." *Taylor v. State*, 90 So. 3d 97, 109 (¶50) (Miss. Ct. App. 2011) (quoting *Moffett v. State*, 49 So. 3d 1073, 1089 (¶45) (Miss. 2010)). "[A] voir dire is

19

presumed sufficient to ensure a fair and impartial jury. To overcome this presumption, a party must present evidence indicating that the jury was not fair and impartial and show that prejudice resulted from the circuit court's handling of voir dire." *Id.* at 110 (¶53) (quoting *Ross v. State*, 954 So. 2d 968, 988 (¶31) (Miss. 2007)).

¶46. We must first note that Antonio's assertion regarding the circuit court's alleged threat of contempt is a misrepresentation of the above exchange. At no point was contempt even mentioned in the transcript before this Court. Further, while Antonio asserts that he was prejudiced by the inability to question the jurors about the trial going into the next week, he does not point to any clear evidence in support of his claim. As the State points out, the jury was permitted to deliberate and reach a verdict without the imposition of time restrictions. Antonio does not set forth any evidence that the jury was rushed or improperly impaneled because of the circuit court's determination that defense counsel's questions were irrelevant. Because Antonio fails to show any prejudice created by the limitation, this claim is without merit.

### B.      *Juror Subpoenas*

¶47. Antonio next claims that the court displayed bias and abused its discretion by instructing the circuit clerk not to issue witness subpoenas for the hearing on Antonio's "Motion for a New Trial and Judgement Notwithstanding the Verdict" and cites Rule 33 of the Mississippi Rules of Criminal Procedure and Rule 45 of the Mississippi Rules of Civil Procedure. Antonio also contends that the court erred by failing to issue an order "denying" the subpoenas. In response, the State argues that the court properly instructed the clerk and

20

that Antonio's request to subpoena jurors as witnesses was improper without the court's leave. The State further argues that because Antonio's counsel did not follow the applicable procedures, no order was necessary to reflect the court's instruction to the clerk. We agree.

¶48.   In support of its stance, the State points to the ruling in *Gladney v. Clarksdale Beverage Co. Inc*., 625 So. 2d. 407 (Miss. 1993). In *Gladney*, the court outlined the procedure to be followed when members of the jury are alleged to have committed misconduct: "Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality." *Id.* at 418. "At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information." *Id*. at 419. While good cause is the bare minimum standard, "the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred. The sufficiency of such evidence shall be determined by the circuit court if a post-trial hearing is indeed warranted under these standards." *Id.*

¶49.   After performing her own amateur genealogy research using Facebook and other unclear methods, trial counsel believed she had uncovered information evincing juror misconduct. Seeking to verify the suspicions, Antonio's counsel attempted to subpoena several members of the jury to testify at the hearing on Antonio's motion for a new trial. Counsel failed to present the alleged findings to the court and obtain leave to subpoena

21

members of the jury. Noting counsel's failure to comply with the applicable, requisite requirements, the trial judge instructed the circuit clerk not to issue the juror subpoenas, effectively quashing them.

¶50. It is within the province of the circuit court to "supervise these post-trial investigations to ensure that jurors are protected from harassment and to guard against inquiry into subjects beyond which a juror is competent to testify under M.R.E. 606(b)." *Id.* This "supervision is warranted to protect the interest of the parties and jurors." *Id.*

¶51. Antonio's trial counsel failed to adhere to any of the outlined procedures and instead sought to subpoena members of the jury without the court's permission or oversight. The court refuted the allegation that it had instructed the clerk to deny *all* of Antonio's future subpoena request and, in fact, made it clear during a hearing on the matter that Antonio "certainly [had] a right to subpoena non-jurors" as long as the requests were properly prepared in accordance with Mississippi rules. Thus, the issue raised here is without merit.

> *Issue 9: Whether the circuit court erred in its application of Rule 606(b) of the Mississippi Rules of Evidence*

¶52. We now turn to Antonio's ninth assignment of error, in which he contends the circuit court erred in its application of Rule 606(b) of the Mississippi Rules of Evidence. Despite Antonio's failure to follow the applicable procedure to obtain leave to subpoena members of the jury as witnesses, the court took the issue up for review. In relevant part, Rule 606(b), addressing a juror's competency as a witness, provides:

During an Inquiry into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence. During an inquiry into the

validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify about whether:
      (A) extraneous prejudicial information was improperly brought
      to the jury's attention; or
      (B) an outside influence was improperly brought to bear on any juror.

¶53.    Antonio does not allege that either of the exceptions listed in Rule 606(b) were applicable to his case. Antonio made attempts to subpoena and question jurors without leave from the court or an adequate basis for requiring their testimony at his hearing. The circuit court correctly advised the clerk regarding Antonio's requests and correctly determined that there was no sufficient basis to allow Antonio to subpoena the jury members. After reviewing the record, we find no error.

> *Issue 10: Whether the trial judge erred in denying Antonio's motion for recusal.*

¶54.    In his tenth assignment of error, Antonio argues that the court erred by denying his motion for recusal. The previously discussed claims of bias serve as support for this assertion; because we found those claims to be without merit, this claim necessarily fails.

### VI.    Evidentiary Issues

¶55.    The Court deems it appropriate to address Issues 11 and 12 collectively.

> *Issue 11: Whether the circuit court abused its discretion by admitting a bullet into evidence.*

¶56.    Antonio's eleventh assignment of error argues that the court abused its discretion by allowing a bullet recovered from the vehicle used in the commission of the shooting to be

entered into evidence during the trial. Antonio alleges the bullet was planted by authorities. The bullet in question was recovered from the vehicle during processing at the Mississippi Crime Lab.

¶57. In *Shelton v. State*, 45 So. 3d 1203, 1209-10 (¶¶16, 18) (Miss. Ct. App. 2010), the defendant argued that the trial court should have suppressed a duffle bag of marijuana used as evidence in his prosecution, asserting that the prosecution failed to "demonstrate a sufficient chain of custody." This Court rejected Shelton's argument, holding that "[i]n such matters, the presumption of regularity supports the official acts of public officers, and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant." *Id.* at 1210 (¶19) (citing *Ellis v. State*, 934 So. 2d 1000, 1005 (¶22) (Miss. 2006)).

¶58. Antonio has failed to establish any break in the chain of custody to support his theory of planted evidence. Instead, Antonio relies on mere allegations that are insufficient to bolster his argument. Absent evidence of any kind to advance Antonio's theory, we decline to reach the merits of the claim.

*Issue 12: Whether the circuit court erred in excluding Mary Jones's testimony.*

¶59. In his twelfth assignment of error, Antonio argues that the court erred by excluding the proposed testimony of defense witness Mary Jones. Jones was not a listed party on Antonio's witness list, and, according to Antonio's trial counsel, did not come forth until the end of the trial. During Jones's proffer, the court learned that Jones sat in the courtroom during the trial. After listening to other sequestered witnesses testify, Jones claimed that she

24

realized "they [were] leaving parts out" and decided to offer her account of events on behalf of the defendant. The court also heard testimony that Jones did not have any testimony to offer regarding the altercation that occurred prior to the shooting or the shooting itself; she arrived at the scene after the incident. Jones also testified that she had an ongoing relationship with the district attorney's office and was a friend of Hall's family but did not offer herself as a witness for either party during the two-year period prior to the trial.

¶60. Mississippi Rule of Evidence 615 provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." "The rule's purpose is to 'exercise a restraint on witnesses "tailoring" their testimony to that of earlier witnesses and aid in detecting testimony that is less than candid.'" *Randle v. State*, 220 So. 3d 217, 222 (¶13) (Miss. Ct. App. 2017) (quoting *Avery v. State*, 119 So. 3d 317, 319 (¶7) (Miss. 2013); *Douglas v. State*, 525 So. 2d 1312, 1316 (Miss. 1988)). "Simply put, Rule 615 guards against 'falsification, inaccuracy, and collusion.'" *Id*. (quoting *Avery*, 119 So. 3d at 319 (¶7) (quoting M.R.E. 615 advisory committee note).

¶61. In the case sub judice, the State invoked the sequester rule. As the State noted, "failure to comply with a sequestration order does not automatically render [a] witness's testimony inadmissible. Rather, the decision to exclude the witness's testimony rests within the trial court's sound discretion." *Harris v. State*, 937 So. 2d 474, 479 (¶16) (Miss. Ct. App. 2006). As an appellate court, we are "limited to an abuse-of-discretion standard when reviewing an alleged sequestration violation." *Johnson v. State*, 242 So. 3d 145, 163 (¶36) (Miss. Ct. App. 2017) (quoting *White v. State*, 127 So. 3d 170, 173 (¶10) (Miss. 2013)).

"Reversal is not justified unless there is a showing of prejudice sufficient to constitute an abuse of discretion on the part of the trial judge in not ordering a mistrial or not excluding testimony." *Id.* (quoting *Whittington v. State*, 748 So. 2d 716, 719 (¶19) (Miss. 1999)).

¶62. Antonio has not shown that the decision to exclude Jones's testimony prejudiced him. Jones was not offered as a rebuttal witness and did not profess to have any first-hand knowledge of the shooting or the events leading up to the incident. Accordingly, we find the court committed no error by excluding the testimony of Mary Jones. The court declined to violate Rule 615, and we find no error or merit to Antonio's argument.

## VII. Continuance

*Issue 13: Whether the circuit court erred in denying Antonio's motion for continuance.*

¶63. Antonio's thirteenth assignment of error is that his defense was prejudiced by the circuit court's denial of his continuance request seeking time to get Officer Kirkwood to court to testify. The State argues that there was no manifest injustice because the testimony Antonio's defense counsel sought to illicit from Officer Kirkwood was determined to be inadmissible hearsay. We agree.

¶64. Mississippi Code Annotated section 99-15-29 (Rev. 2015) provides as follows regarding continuance requests:

> On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its

26

discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.

"The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." *Boone v. State*, 973 So. 2d 237, 241 (¶13) (Miss. 2008) (quoting *Ross v. State*, 954 So. 2d 968, 1007 (¶91) (Miss. 2007)).

¶65. Following a hearing on the matter, the court deduced that Officer Kirkwood's proposed testimony centered around a statement taken from James Shorty's mother about threats of violence against their family in the wake of Roberts's death. The court determined that the testimony would be inadmissible hearsay and irrelevant to the determination of guilt or innocence of Antonio. The court denied Antonio's motion to continue the trial so that Officer Kirkwood could be re-subpoenaed and produced. Because the testimony of the proposed witness would have been inadmissible and was irrelevant to the matter at hand, we find the circuit court was within its discretion to deny the continuance. This issue is without merit.

### VIII. Alleged Prosecutorial Misconduct

¶66. The Court deems it appropriate to address Issues 14 and 15 collectively.

*Issue 14: Whether the State committed prosecutorial misconduct that warrants reversal.*

27

¶67.    Antonio alleges that the State, by committing the previously discussed discovery violations, committed prosecutorial misconduct warranting reversal.  Having found the discovery violations raised to be without merit, this claim fails.

*Issue 15: Whether the State made an improper "send a message" argument.*

¶68.    In his fifteenth assignment of error, Antonio also argues that the State committed prosecutorial misconduct by making an improper "send a message" argument in its closing.  During closing arguments, Antonio's counsel remarked:

> Abioto:    I know Travis Roberts' life has been worth something.  He has to stand as a beacon to stop the violence, to stop the killing.

In its closing argument, the State responded as follows:

> The State:    I agree 100 percent with Ms. Abioto that the violence has got to stop. . . . People, if you want to stop the violence, when you have evidence in front of you like you do here today, you must hold those that are responsible for the gun violence accountable for their actions, and you hold him accountable for his actions by your verdict of guilty of conspiracy and guilty of murder. Thank you.

Admittedly, the State's comments may have constituted an inappropriate "send the message" argument.  It might also be argued that the State's comments were spurred by the remarks of Antonio's counsel.  However, the court did not reach the merits of this argument because no objection was made during trial.

¶69.    "If no contemporaneous objection is made, the error, if any, is waived." *Bryant v. State*, 232 So. 3d 174, 182 (¶22) (Miss. Ct. App. 2017) (quoting *Stevenson v. State*, 156 So. 3d 927, 930 (¶13) (Miss. Ct. App. 2015)).  When "no objections were raised at trial, the defendant who fails to make a contemporaneous objection must rely on plain error to raise

28

the assignment on appeal." *Id.* at (¶23) (quoting *Hurt v. State*, 34 So. 3d 1191, 1196 (¶12) (Miss. Ct. App. 2009)). "A review under the plain-error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." *Id.*

¶70. "In general, the failure to object to the prosecution's statements in closing argument constitutes a procedural bar. However, in extreme cases, a failure to object to questions which were violative of a constitutional right will not act as a procedural bar to consideration." *Dampier v. State*, 973 So. 2d 221, 235 (¶39) (Miss. 2008) (quoting *Ross v. State*, 954 So. 2d 968, 1001-02 (¶71) (Miss. 2007)).

¶71. Antonio's attorney does not allege a violation of any constitutional right, nor does the record reveal any resulting miscarriage of justice from the State's comments; the overwhelming weight of the evidence favors Antonio's conviction. No contemporaneous objection to the prosecution's closing argument was raised at trial. Therefore, this claim is procedurally barred.

## IX. Jury Instructions

*Issue 16: Whether the circuit court properly instructed the jury.*

¶72. The court denied Antonio's self-defense jury instructions (D-1-10; D-1-11; and D-1-12), finding that Antonio's theory of self-defense was not supported by the evidence. Antonio contends that he was entitled to the self-defense and defense of others jury instructions because "[Antonio] and his co-defendant were blocked in by several cars and surrounded by several persons that were fighting them." Again, the record does not support Antonio's

assertion. Antonio's testimony at trial revealed that *no one,* including Roberts or the active participants in the fight—other than him— had or brandished a weapon during the encounter.

¶73. When reviewing the denial of jury instructions, our applicable standard of review is abuse of discretion. *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010).

¶74. In *Roberson v. State*, 19 So. 3d 95 (Miss. Ct. App. 2009), the Court held that

> [c]laims of self-defense in a homicide case must be supported by factual and circumstantial evidence from which a jury may determine that 'a defendant was justified in having committed the homicide because he was, or had reasonable grounds to believe that he was, in imminent danger of suffering death or great bodily harm at the hands of the person killed. . . .' Merely stating that a killing was done in self-defense will not suffice to support such a theory.

*Id.* at 100 (¶6) (quoting *Strong v. State*, 600 So. 2d 199, 203 (Miss. 1992)).

¶75. In addition to Antonio's testimony, the court was able to consider the sworn testimony of eight eyewitnesses, stating that Travis Roberts was not directly involved in the fighting but rather a mere bystander. Witness accounts indicate that Antonio's co-defendant James Shorty and Darrius Brooks were engaged in a physical fight, and neither of the men or their friends had weapons. Each of the State's witnesses gave nearly identical accounts of the events from their various vantage points, and each witness indicated that Antonio was the sole party responsible for introducing a gun to the fist fight. Additionally, witness testimony revealed that Antonio approached Roberts with the firearm, seemingly unprompted. Based on the accounts and Antonio's own testimony, the court correctly determined there was no evidentiary basis to support a self-defense instruction. Given the facts and testimony in the record, a jury could not have reasonably concluded that Antonio shot Roberts in defense of himself or others; thus the instruction was properly denied.

30

## X.    Sufficiency of the Evidence

*Issue 17: Whether the circuit court erred in denying Antonio's motion for a JNOV or new trial.*

¶76.    Antonio's seventeenth assignment of error challenges the sufficiency of the evidence considered by the jury in support of his conviction.  The State argues there was indeed sufficient evidence for the jury to reach a guilty verdict, considering the essential elements of the crime of first-degree murder.

¶77.    "In reviewing a challenge to the sufficiency of the evidence, the critical inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parish v. State*, 176 So. 3d 781, 785 (¶13) (Miss. 2015).  "The credible evidence supporting the defendant's guilt must be taken as true, and the prosecution must be given the benefit of all reasonable inferences that may be reasonably drawn from the evidence." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993).

¶78.    During trial, the jury heard testimony from nine eyewitnesses, including Antonio, confirming that Antonio shot a gun at the scene of the incident.  Eight of those witness accounts identified Antonio Hall as the individual who fatally shot Travis Roberts at close range.  Based on the testimonial evidence alone, a rational trier of fact could have found and did find that the essential elements of murder were proven beyond a reasonable doubt. Accordingly, Antonio's claim challenging the sufficiency of the evidence fails.

## XI.    Cumulative Error

*Issue 18: Whether an accumulation of errors requires reversal.*

31

¶79. Finally, Antonio urges that "extensive cumulative errors" warrant the grant of a new trial. The Mississippi "cumulative-error doctrine stems from the doctrine of harmless error, codified under Mississippi Rule of Civil Procedure 61." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007). The cumulative-error doctrine "holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Id.*

¶80. "A defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32 (1973). While Antonio's claims of error are numerous, we have found only one harmless error related to juror misconduct. As stated, the error was harmless, and we do not find that it rendered the trial fundamentally unfair. There was overwhelming evidence to support the jury's verdict, notwithstanding prejudice alleged from the isolated error.

¶81. After a thorough review of the record, we identify no errors requiring a new trial. Accordingly, we affirm Antonio Hall's murder conviction and sentence.

¶82. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., NOT PARTICIPATING.**